UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| COREY LAWSON, ET AL. | CIVIL ACTION NO. 12-2233 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CITY OF MONROE, ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

This action was brought by Plaintiffs Corey Lawson ("Lawson") and Stanley Hall ("Hall") (collectively, "Plaintiffs") against Defendants City of Monroe ("the City") and Charles Westrom ("Westrom") (collectively, "Defendants"). Plaintiffs have raised claims stemming from their termination from the City of Monroe Sewer Department.

Pending before the Court is the Motion for Summary Judgment filed by Defendants [Doc. No. 22]. For the following reasons, the Motion is GRANTED.

I.      BACKGROUND AND PROCEDURAL HISTORY

Hall began working for the City in 1992 as a laborer in the Sewer Department. Eventually, Hall was promoted to Labor Leader and was responsible for operating a sewer stoppage truck. In 1999, the City hired Lawson. He was initially assigned to work at the water pollution plant, but he was transferred to the Sewer Department in 2000. Hall and Lawson were both members and union officials of the American Federation of State, Country, and Municipal Workers, Local #2388.

Westrom began working as Sewer Manager in April 2007 and in this position had supervisory authority over Sewer Department employees, including Hall and Lawson. During his supervision, Hall and Lawson incurred several disciplinary actions. Both Plaintiffs were

counseled not to leave the work area without clocking out or seeking permission.  On March 2,

2009, Hall received a written warning for refusing a work order and insubordination.  Because

Hall refused to sign the warning, he was suspended for one week.  On June 23, 2009, Hall

received a written warning because he failed to report to work at his scheduled time.  On August

18, 2009, Hall received two written warnings for failing to respond to a work-related page while

on duty and for being absent for four hours without clocking out.  Hall received additional

written warnings on September 2, 2010; September 22, 2010; and May 11, 2011.

On November 10, 2008, Lawson received a verbal warning from Westrom for disrupting

work flow and encouraging employees to ignore management directives.  On January 5, 2009,

Lawson received a verbal warning for being late. On January 9, 2009, Lawson received a written

warning for remaining on Sewer Department property after his shift ended.  On August 12, 2009,

Lawson received a written warning for failing to provide the City with at least 30 minutes

advance notice of being absent from work.  After nearly two years without any warnings, Lawson

received a written warning on May 12, 2011, for failing to clean lines as directed, in violation of

Work Rule #19.

However, Plaintiffs contend that they were subjected to disciplinary actions and,

ultimately, terminated because of Westrom's anti-union animus.  When Westrom issued a verbal

warning to Lawson on November 10, 2008, Lawson alleged that he was warned about coercing

other employees to rebel against management decisions within the Sewer Department.  Lawson

testified that, in January 2009, Westrom instructed him to "quit talking to other employees about

union business."  Westrom also testified that he had "concerns" about Hall "stirring up the men,"

and he voiced these concerns to Hall.  Hall contends that the "stirring up" to which Westrom

2

referred included the advice Hall gave to other union members and the filing of union grievances. Lawson also testified that Westrom was upset that he filed grievances and felt Westrom "didn't like it" when Lawson talked with other employees about their contract and pay.

Plaintiffs also point to Westrom's personal notes from April 22, 2008 to July 6, 2009, in which Westrom recorded several statements they alleged to be stereotypical anti-union comments, though it is contested whether these comments should be attributed to Westrom or another employee.  Finally, Plaintiffs cite two meetings in 2009 in which Westrom prevented union representatives from attending and, in one case, called Monroe City Police to have the union representative removed from the meeting.

In July 2011, the City reviewed crew work orders with GPS data on the Sewer Department's work vehicles.  Westrom determined that two Stoppage Crew employees' work orders did not coincide with their vehicle GPS tracking system: Lawson and Lance Kyles ("Kyles"), a non-Union employee.  Lawson and Kyles had reported work completed at a certain site even though the GPS data showed that their vehicle had not visited that location.

Upon learning this information, Westrom asked Joshua Laneaux ("Laneaux"), the Sewer Department's electrical instrumentation technician, to review video recorded from the work area's surveillance cameras to see if the Sewer Department employees' presence corresponded with their time cards.  Laneaux discovered that several employees left the work area in their personal vehicles without clocking out: Hall, Lawson, Kyles, and Nathan Blanson ("Blanson").

On the basis of this evidence, Westrom issued Written Warnings to Hall and Lawson and set a pre-disciplinary hearing for August 23, 2011.  Westrom also recommended that Kyles and Blanson be terminated, but they resigned before their pre-disciplinary hearing.  Following the

3

pre-disciplinary hearing, the City discharged Hall and Lawson on August 30, 2011.

On August 21, 2012, Plaintiffs filed this action [Doc. No. 1], initially naming only the City as Defendant, and the parties soon commenced discovery.  On January 23, 2013, Plaintiffs filed an Amended Complaint [Doc. No. 11], adding Westrom as Defendant.  The parties completed discovery and Defendants filed this Motion for Summary Judgment [Doc. No. 22] on May 7, 2013.  Plaintiffs filed their Opposition [Doc. No. 31] on June 19, 2013, and Defendants filed a Reply [Doc. No. 40] on July 8, 2013.  Finally, on July 23, 2013, Plaintiffs filed a Sur-Rebuttal [Doc. No. 43].

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012) (citing *Celotex Crop. v. Catrett*, 477 U.S. 317, 323 (1986)).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine issue of material fact for trial.  *ACE Am. Ins. Co*, 699

F.3d at 839.  The nonmoving party must show more than "some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of

the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at

255**.**

> **B.      Section 1983**

Section 1983 creates a private cause of action for violations of federal rights and does not,

itself, convey federal rights. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Energy Mgmt. Corp. v.*

*City of Shreveport*, 467 F.3d 471, 481 (5th Cir. 2006).  Therefore, an underlying constitutional or

statutory violation is a predicate to any theory of liability under § 1983. *Johnston v. Harris Cnty.*

*Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989).  Generally, three elements must be

established in a § 1983 action: (1) deprivation of a right secured by federal law, (2) that occurred

under color of state law, and (3) was caused by a state actor. *Victoria W. v. Larpenter*, 369 F.3d

475, 482 (5th Cir. 2004).

Here, Plaintiffs have alleged the deprivation of multiple rights secured by federal law,

including under the First and Fourteenth Amendments.

> **1.      First Amendment**

The First Amendment protects a public employee's right to associate with a union. *Prof'l*

*Ass'n of Coll. Educators, TSTA/NEA v. El Paso Cnty. Coll. Dist.*, 730 F.2d 258, 262 (5th Cir.

1984).  "The right of association encompasses the right of public employees to join unions and

the right of their unions to engage in advocacy and petition government in their behalf." *Boddie*

*v. City of Columbus*, 989 F.2d 745, 749 (5th Cir. 1993).  This right "is violated by state actors whose purpose is either to intimidate public employees from joining a union or from taking an active part in its affairs or to retaliate against those who do." *Hitt v. Connell*, 301 F.3d 240, 245-46 (5th Cir. 2002).

To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he suffered an adverse employment action, (2) his interest in associating outweighed his employer's interest in efficiency, and (3) his protected activity was a substantial or motivating factor in the adverse employment action." *Breaux v. City of Garland*, 205 F.3d 150, 156, 157 (5th Cir. 2000).

Here, Plaintiffs have shown that they suffered an adverse employment action, as both were terminated.  They also have shown that their interest in associating with their union outweighed the City's interest in efficiency, though the City undoubtedly has an important interest in running an efficient Sewer Department.

However, the Court need not engage in the *Pickering* balancing test because Plaintiffs have not shown that their union activities were a substantial or motivating factor in their terminations.  The anti-union statements and actions made by Westrom occurred in 2009, over two years before Plaintiffs' terminations.  "[T]he mere fact that some adverse action is taken *after* an employee engages in some protected activity" is not enough to establish a prima facie case. *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997).  The Fifth Circuit requires a close temporal proximity between the adverse employment action and the protected activity and has held that a proximity of five months is not close enough. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002).

Here, approximately twenty-four (24) months between the alleged animus by Westrom

6

and Plaintiffs' terminations is not sufficient to satisfy this requirement.  Plaintiffs were never

threatened or warned against becoming union members or officers, and they were merely

expected to carry their work pagers with them to union meetings and respond promptly, if they

attended meetings during their scheduled shifts.

Further, Defendants have shown that they terminated other non-union employees for the

same violations as Plaintiffs.  In this case, the City would have terminated the non-union

employees if they had not resigned before their discovery hearing.  Thus, it is clear that Plaintiffs

would have been terminated even if they had not belonged to a union.  Therefore, Defendants'

Motion for Summary Judgment is GRANTED as to Plaintiffs' First Amendment claims, and

those claims are DISMISSED WITH PREJUDICE.

### 2.      Substantive Due Process

To state a violation of substantive due process under the Fourteenth Amendment, "the

plaintiff must show . . . (1) that he had a property interest / right in his employment, and (2) that

the public employer's termination of that interest was arbitrary or capricious." *Lewis v. Univ. of*

*Tex. Med. Branch of Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (quoting *Moulton v. City of*

*Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)).  The property interest must stem from "state law,

operation of contract, or other independent source." *Cabrol v. Town of Youngsville*, 106 F.3d

101, 105-06 (5th Cir. 1997).

"Substantive due process 'bars certain arbitrary, wrongful government actions regardless

of the fairness of the procedures used to implement them.'" *Marco Outdoor Adver., Inc. v. Reg'l*

*Transit Auth.*, 489 F.3d 669, 673 n. 3 (5th Cir. 2007) (quoting *Zinermon v. Burch*, 494 U.S. 113,

125 (1990)).  Nonetheless, "substantive due process requires only that public officials exercise

7

professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998) (citing *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 223-26 (1985)).  A plaintiff must show that the decision was "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (quotation marks omitted).

Here, Plaintiffs have demonstrated that they have a property interest in their employment because the governing Collective Bargaining Agreement ("CBA") requires that union employees be terminated with cause.  However, Plaintiffs have not demonstrated that Defendants acted arbitrarily and capriciously in terminating their employment.  It is uncontested that Plaintiffs received multiple verbal and written warnings during their tenure.  In the months immediately preceding their terminations, the evidence is undisputed that Plaintiffs left the work area without clocking out, submitted inaccurate time cards and work orders, and failed to complete certain work responsibilities, as well as documented incidents of insubordination.[1]

Based on these facts, Defendants cannot be said to have acted arbitrarily or capriciously in deciding to terminate Plaintiffs.  They have an obvious interest in maintaining an efficient department that responds to work calls promptly.  Therefore, Defendants' Motion for Summary Judgment as to the substantive due process claims is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

---

[1]Plaintiffs' arguments that the term "work area" was ambiguous and that the policy of requiring clocking out before leaving the yard do not create genuine issues of material fact. Employees Handbook Rules #17 and #18 clearly state that permission must be sought to leave the work area and that employees must punch out when doing so for personal reasons.  No reasonable jury could conclude that the entire City of Monroe constituted their "work area."

**C.      Alleged Breach of Collective Bargaining Agreement**

Plaintiffs next bring claims for alleged breach of their CBA.  Section 301(a) of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), governs CBAs and allows parties to

sue in federal court for breaches of CBAs. *See Stevens v. Lake Charles Coca-Cola Bottling Co.*,

2011 WL 2173649, *2 (W.D. La. June 1, 2011).

However, the LMRA exempts states and political subdivisions, including municipalities,

from suits under the LMRA. *Johnson v. City of Monroe*, 2007 WL 1521436, *6 (W.D. La. May

21, 2007). As employees of a municipality, Plaintiffs are not "employee[s]" and the City is not an

"employer" within the meaning of the LMRA. *See* 29 U.S.C. § 142(3) (Under the LMRA, "[t]he

terms . . . 'employer' [and] 'employee' . . . shall have the same meaning as when used in the

National Labor Relations Act [("NLRA")]."); *see also* 29 U.S.C. Art. § 152(3) ("[t]he term

'employee' . . . shall not include any individual . . . employed by . . . any other person who is not

an employer as herein defined."); 29 U.S.C. § 152(2) ("[t]he term 'employer' . . . shall not

include any State or political subdivision thereof . . . ."); *Police Dep't of Chicago v. Mosley*, 408

U.S. 92, 102 n.9 (1972) ("the [NLRA] specifically exempts States and subdivisions . . . and . . .

cities from the definition of 'employer' within the Act.") (citing 29 U.S.C. § 152)).

Thus, the Defendants' Motion for Summary Judgment is GRANTED as to the breach of

CBA claim, and the claim is DISMISSED WITH PREJUDICE.

**D.      Louisiana Constitution**

Plaintiffs also brings various claims under the Louisiana Constitution, which are

analogous to their federal constitutional claims.

### 1.  Article I, § 2

Plaintiffs assert violations of due process under the Louisiana Constitution, art. 1, § 2. *See* La. Const. art 1, § 2 ("No person shall be deprived of life, liberty, or property, except by due process of law.") The "scope of protection under the Louisiana Constitution parallels the Fourteenth Amendment of the United States Constitution." *Johnson v. City of Monroe*, 2007 WL 1521436, *5 (W.D. La. May 21, 2007).  For the same reasons stated with respect to Plaintiffs' federal due process claims, Defendants' Motion for Summary Judgment is GRANTED and the claim is DISMISSED WITH PREJUDICE.

### 2.  Article 1, §§ 7, 9

Plaintiff next brings claims under Article I, §§ 7, 9, which are equivalent to claims under the First Amendment. *See Hymes v. City of Natchitoches*, 2012 WL 4855444, *11 (W.D. La. Oct. 10, 2012).  For the reasons stated with respect to Plaintiffs' First Amendment claims, Defendants' Motion for Summary Judgment is GRANTED and the claims are DISMISSED WITH PREJUDICE.

### 3.  Article 10, § 10

Plaintiffs also bring a claim for violation of Article 10, § 10.  This section largely parallels the First Amendment's Freedom of Association clause.  It establishes that "public employees are protected from discrimination because of their relationship with a labor organization." *Davis v. Henry*, 555 So.2d 457, 462 (La. 1990).  For the reasons stated with respect to Plaintiffs' First Amendment claims,  Defendants' Motion for Summary Judgment is GRANTED and the claim is DISMISSED WITH PREJUDICE.

10

E.      **Fair Labor Standards Act**

Plaintiffs next bring claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §
207, *et seq*.  They seek "compensable time" for the time they allege they were "engaged to wait"
while on the job.

It is well settled that the FLSA covers more than simply time spent working.  Under
appropriate circumstances, it also covers time spent waiting to work. *Skidmore v. Swift & Co.*,
323 U.S. 134 (1944).  "[N]o principle of law found either in the [FLSA] or in Court decisions
precludes waiting time from also being working time . . . .  Facts may show that the employee
was engaged to wait, or they may show that he waited to be engaged.  His compensation may
cover both waiting and task, or only performance of the task itself." *Id.*  "Whether time is spent
predominantly for the employer's benefit or for the employee's is a question dependent upon all
the circumstances of the case." *Amour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).

Plaintiffs point to specific regulations promulgated by the Department of Labor in support
of their argument, specifically, 29 C.F.R. § 553.221, which provides, in pertinent part:

> c) Time spent away from the employer's premises under conditions that are so
> circumscribed that they restrict the employee from effectively using the time for
> personal pursuits also constitutes compensable hours of work . . . .
>
> (d) . . . Time spent at home on call may or may not be compensable depending
> on whether the restrictions placed on the employee preclude using the time for
> personal pursuits . . . . [W]here the conditions placed on the employee's
> activities are so restrictive that the employee cannot use the time effectively
> for personal pursuits, such time spent on call is compensable.

11

29 C.F.R. § 553.221.

The Fifth Circuit has been extremely reluctant to uphold rewards of compensation for "on-call" time, noting, for example, in *Bright v. Houston Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671 (5th Cir. 1991) (*en banc*), cert. denied, 502 U.S. 1036 (1992), that "[e]mployees who have received compensation for idle time generally have had almost no freedom at all." *Id.* at 676. The critical issue in determining whether "waiting time" is compensable under the FLSA as "working time" is "whether the employee can use the [on-call] time for his . . . own purposes." *Paniagua v. City of Galveston, Texas*, 995 F.2d 1310, 1316–17 (5th Cir. 1993) (quoting *Halferty v. Pulse Drug Co.*, 864 F.2d 1185, 1189 (5th Cir. 1989).

Here, Plaintiffs' claims for compensable time are misplaced.  Plaintiffs were not on call employees within the meaning of the FLSA.  Plaintiffs were working regular shifts for a set time period and were compensated for those hours worked.  They were expected to carry their pagers with them during their work shifts in case they needed to be dispatched to a line cleaning or sewer stoppage call.  Plaintiffs seem to suggest that simply because they were carrying pagers during their workday, they were automatically "on call" within the meaning of the FLSA. However, these pagers merely facilitated the dispatch of workers during their scheduled shifts. There is no evidence that Plaintiffs were required to respond to pages during non-shift times or were uncompensated for any time when they were carrying their pagers.

Further, even if the Court concluded that Plaintiffs were working "on call," Plaintiffs offered evidence that they left the area "to get newspapers, cigarettes, or food," demonstrating that the time was used for their "own purposes," and further supports the conclusion that Plaintiffs are not entitled to compensable time under the FLSA.  Therefore, Defendants' Motion

for Summary Judgment on this claim is GRANTED, and Plaintiffs' FLSA claims are DISMISSED WITH PREJUDICE.

### F.    Other Miscellaneous Claims

Plaintiffs raise several other claims based on various labor provisions.  First, Plaintiffs contend in their Opposition that Defendants violated their right to have union representation present at investigatory interviews.  Second, Plaintiffs contend they have a right to remain on company property after work hours to conduct union business.  Third, Plaintiffs argue that Defendants violated the NLRA by unilaterally changing the terms and conditions of employment.  Fourth, Plaintiffs argue that Defendants engaged in surveillance, or created the impression of surveillance, of union employees, in violations of Section 8(a)(1) of the NLRA.  Finally, Plaintiffs make a vague claim for "unlawful interrogation" under the NLRA.

First, these claims all appear predicated on sections of either the NLRA or the LMRA, which specifically exempts political subdivisions and their employees.  To the extent that these claims are based on state law, La. R.S. 821, *et seq.*, the Court declines to exercise supplemental jurisdiction over those claims. Thus, Defendants' Motion for Summary Judgment is GRANTED, and these federal claims are DISMISSED WITH PREJUDICE.  To the extent that state law claims are alleged, they are DISMISSED WITHOUT PREJUDICE.

### G.    Qualified Immunity

Plaintiffs also argue that Westrom is not entitled to qualified immunity.  However, because the constitutional claims have been dismissed, the Court need not reach the question of whether Westrom is entitled to qualified immunity.

**III.     CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 22] is

GRANTED, and Plaintiffs Corey Lawson's and Stanley Hall's claims based on the federal and

state constitutions, and federal statutory law, including the LMRA, the FLSA, and the NLRA, are

DISMISSED WITH PREJUDICE.  The Court declines to exercise jurisdiction over any

remaining state law claims, and those claims are DISMISSED WITHOUT PREJUDICE.

MONROE, LOUISIANA, this 31st day of July, 2013.


**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**